United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLE LYNN BEARD,<br>  Plaintiff,<br>  v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>  Defendants. | Case No. 17-cv-03218-JCS<br><br>**ORDER GRANTING DAUBERT MOTIONS**<br><br>Re: Dkt. Nos. 51, 57 |

## I. INTRODUCTION

This case involves a motor vehicle accident between Plaintiff Nichole Beard and a U.S. Postal Service vehicle. In advance of the bench trial that is currently scheduled to commence on April 1, 2019, the parties bring motions to exclude expert testimony under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993). Defendant seeks to exclude certain opinions offered by Plaintiff's retained expert, Lawrence Nordhoff, Jr., regarding future medical/surgical costs ("Defendant's Motion"), while Plaintiff asks the Court to exclude opinions offered by Defendant's retained expert, Susan E. Pantely, regarding the reasonable value of Plaintiff's past medical care ("Plaintiff's Motion"). The Court finds that the Motions are suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b) and therefore vacates the motion hearing set for January 25, 2019 at 9:30 a.m. The Case Management Conference set for the same date is moved from 9:30 a.m. to 2:00 p.m. For the reasons stated below, both Motions are GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. §

## II. ANALYSIS

### A. Legal Standards

Under Rule 702 of the Federal Rules of Evidence, a witness may offer expert testimony if the following requirements are met:

> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In determining whether expert testimony meets the requirements of Rule 702, courts follow the approach set forth in *Daubert v. Merrell Dow Pharms., Inc*., in which the Supreme Court described the relevant inquiry as follows:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

509 U.S. 579, 590 (1993).

With respect to the first requirement, that an expert must testify to "scientific knowledge," the Court in *Daubert* explained that "[t]he adjective 'scientific' implies a grounding in the methods and procedures of science . . . [while] the word 'knowledge' connotes more than subjective belief or unsupported speculation . . . [and] 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Id*. (quoting Webster's Third New International Dictionary 1252 (1986)). The Court declined to set forth a definitive test but offered some "general observations" about the types of factors that might be considered in determining whether this requirement is met. *Id*. at 593. These include: 1) whether the methodology can be or has been tested; 2) whether the theory and technique has been subjected to peer review; 3) if a "particular scientific technique" is involved, the known or potential rate of error; and 4) the degree of acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 592-94.

2

The Ninth Circuit has noted that the "scientific knowledge" requirement is usually met by "[e]stablishing that an expert's proffered testimony grows out of pre-litigation research or that the expert's research has been subjected to peer review." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). However, when such evidence is not available, the proponent's experts may satisfy this requirement by "explain[ing] precisely how they went about reaching their conclusions and point[ing] to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Id.* at 1319.

The second requirement under Rule 702, that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue," "goes primarily to relevance." *Id.* at 591. This is a question of "fit," and "is not always obvious." *Daubert*, 509 U.S. at 591. The Court cautioned that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id*. To meet this requirement there must be "a valid scientific connection to the pertinent inquiry." *Id*. In other words, the expert testimony must "logically advance[ ] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315. This requirement is more stringent than the relevancy requirement of Rule 402 of the Federal Rules of Evidence, "reflecting the special dangers inherent in scientific expert testimony." *Jones v. U.S.*, 933 F.Supp. 894, 900 (N.D. Cal., 1996) (citing *Daubert*, 509 U.S. at 591; *Daubert II*, 43 F.3d at 1321 n. 17). In particular, expert testimony "'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Id*. (quoting *Daubert*, 509 U.S. at 595 (citation omitted)). "Therefore, a federal judge should exclude scientific expert testimony under the second prong of the *Daubert* standard unless he is 'convinced that it speaks clearly and directly to an issue in dispute in the case.'" *Id*. (quoting *Daubert II*, 43 F.3d at 1321 n. 17).

**B.     Whether Nordhoff Opinions Should be Excluded**

   **1. Background**

Mr. Nordhoff was retained as an expert by Plaintiff to provide opinions about the reasonableness of Plaintiff's medical bills for services she received in connection with the injuries

3

1 she sustained in the accident upon which her claims are based. Tseng Decl., Ex. B (Nordhoff Report) at ECF p. 1.[2] Mr. Nordhoff was also asked to "look at reasonable medical future costs relating to a 2-level lumbar fusion surgery." *Id*. Mr. Norhoff's opinions on the latter question are the subject of Defendant's Motion. In his report, Mr. Nordhoff offered cost ranges for fusion surgery in the Bay area that he obtained from two websites that he found by conducting Google searches, www.costhelper.com and www.healthcarebluebook.com. *Id*. at ECF p. 28. He states that on www.costhelper.com, "[f]ees ranged from $80.000 to $150.00" and that on www.healthcarebluebook.com, "[f]ees ranged from $58.280 to $197,104.000.00." *Id*.[3] Mr. Nordhoff explained in his report that the websites gave these "ranges for fusion surgery with no amount listed for 1 versus a 2-level fusion surgery." *Id*. Likewise, he testified in his deposition that these websites did not address 2-level fusion and he could not find any website that addressed the costs of 2-level fusion. Tseng Decl., Ex. C (Nordhoff Depo.) at 53. Mr. Nordhoff further testified that he could not recall using these websites before, did not know how either gets its data, could not remember exactly how he had searched or whether his search results were specific to Northern California, did not know if either website was reliable, and was unaware if these websites are generally relied upon in his field of expertise. *Id*. at 54-58.

Mr. Nordhoff's report also provides a list of fees, corresponding to certain billing codes ("CPT Codes"), that he obtained by calling the Sutter Health billing department. Tseng Decl., Ex. B (Nordhoff Report) at ECF p. 28. Although Mr. Nordhoff provides definitions for all of the billing codes, which he says apply to 2-level lumbar fusion surgery, *see id.* at 28-29, he does not explain in his report how he decided which billing codes to include. At his deposition, he testified that they were provided to him by Plaintiff's counsel. *See* Tseng Decl., Ex. C (Nordhoff Depo.) at 51. Although Mr. Nordhoff thought the codes might have been provided to Plaintiff's counsel by one of Plaintiff's surgeons, he could not say for sure how Plaintiff's counsel came up with the list. *Id*. He testified that he was "just given the codes, and [he] went by the codes." *Id*. at 52. He also

---

[2] The Court uses the page numbers assigned by ECF to Docket No. 51-1 because the report does not contain its own page numbers.
[3] The dollar amounts in Mr. Nordhoff's Report are set forth here exactly as they appear in the report.

4

1  testified that he provided Sutter's billing amounts because their billing department "more
2  cooperative" and that he tried to get the same information from Stanford and UCSF without
3  success. *Id*. at 58-59.

### 2. Application of Legal Standards

As discussed above, a witness may offer an expert opinion so long as it meets the "scientific knowledge" and relevance requirements of Rule 702 and *Daubert*. The opinions of Mr. Nordhoff that are challenged by Defendant do not meet those requirements.

With respect to the cost ranges that Mr. Nordhoff has provided based on the websites discussed above, Mr. Nordhoff has provided no basis from which to conclude that the information he found on these websites is reliable, that the websites are generally relied upon in his field, or that his search methodology was sound. Consequently, the costs ranges do not meet the "scientific information" requirement. Nor do the cost ranges satisfy the relevance requirement as Mr. Nordhoff acknowledged that the costs he obtained from these websites were for single level fusion rather than the 2-level fusion surgery at issue in this case. Moreover, the extremely broad range that he presents (between $58,000 and $197,000) also makes these opinions unhelpful to the trier of fact.

The costs Mr. Nordhoff obtained from Sutter also do not satisfy the requirements of *Daubert* and Rule 702. First, there is nothing that qualifies the information Mr. Nordhoff obtained from Sutter as "scientific knowledge." No particular expertise was involved in obtaining the information; nor was there any particular methodology involved in deciding which health care provider's fees he would provide in his report -- Sutter's billing information was simply the only information he could get. Indeed, the list of fees set forth in Mr. Nordhoff's report does not appear to constitute an expert opinion at all. Further, the Sutter costs set forth in Mr. Nordhoff's report do not meet the relevance requirement of Rule 702. In particular, Mr. Nordhoff has not provided any basis from which the Court can conclude that the CPT codes he has used are an appropriate basis for determining the likely future cost of the 2-level fusion surgery Plaintiff may require. In other words, the information Mr. Nordhoff provides summarizing fees charged by Sutter for certain CPT codes does not meet the requirement that expert opinion "fit" the issues in

the case.

Accordingly, the Court excludes Mr. Nordhoff's opinions regarding future medical-surgical costs on the basis that they do not meet the requirements of *Daubert* and Rule 702.

**C. Whether Pantely Opinions Should be Excluded**

**1. Background**

Defendant retained Ms. Susan Pantely, an actuary, to address the market value of medical services Plaintiff received from Sutter Physician Services in San Leandro, California from July 15, 2015 through August 23, 2018. Zack Decl., Ex. B (Pantely Report) at ECF p. 2.[4] In her expert report, Ms. Pantely states that she reviewed the Sutter billing records and estimated the typical payments by private health plans for these services. *Id*. at ECF p. 3. Her estimates of typical payments were based on median reimbursement rates for the services Plaintiff received as reflected in the Truven MarketScan 2015 health claims database for the Vallejo-Fairfield metropolitan statistical area. *Id*. In her deposition, Ms. Pantely testified that she has access to this database because her company pays an annual fee to the company that maintains the database. Stoll Decl., Ex. 1 (Pantely Dep.) at ECF pp. 9-11. She testified that the Truven database contains "about . . . a quarter to half of the claims in the United States" but she did not know how Truven obtains its data. *Id*. at ECF p. 11. The database contains the amounts that were actually paid on individual claims. *Id*. at ECF p. 16.[5]

According to Ms. Pantely, one of her employees who has worked for her for eleven years and for her company for longer developed SAS code to search the Truven database for claims corresponding to the CPT Codes found in Plaintiff's medical records for the relevant geographical area and year and created an Excel spreadsheet summarizing those claims. *Id*. at ECF p. 18. Either she or her staff then used this information to calculate median amounts for each code. *Id*. at ECF pp. 22-23. Another employee, possibly Norman Yu, "would have reviewed SAS code for

---

[4] Because the Pantely Report has no page numbers, the Court uses the page numbers assigned by ECF to Docket No. 59-3.
[5] Ms. Pantely testified that the Truven database reflects what was "actually paid" to providers and that it "has the deductible and coinsurance" owed by the claimant. *Id*. at ECF p. 36. It is not entirely clear, however, whether the median amounts in her report reflect both the amounts paid by the insurance company and the copayments made by the insured.

6

accuracy." *Id*. at ECF p. 19. Ms. Pantely explained that she prepared her report after her staff "walked [her] through" the results and that she relied on staff to perform the work described above both because their billing rates are lower and because she does not have the expertise to write the SAS code that was used to conduct the search. *Id*. at ECF pp. 19-22.

### 2. Application of Legal Standards

The Court finds that Ms. Pantely's opinions based on data from the Truven database do not meet the requirements of Rule 702 because the "scientific knowledge" requirement is not met. In particular, it is unclear how the Truven database is compiled and there is nothing in the record showing that the database is considered reliable in the actuarial field. Nor has Defendant offered any evidence to show that the SAS code that was used to search the database was adequate. Ms. Pantely conceded that she is not an expert in this respect and Defendant has not independently established that the individual who wrote the code or the staff member who may have reviewed the code *are* experts. The fact that the individual who wrote the code has worked for Ms. Pantely and her company for many years is not sufficient. Accordingly, the Court excludes Ms. Pantely's opinions regarding the market value of Plaintiff's past medical care.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion and Defendant's Motion are both GRANTED.

**IT IS SO ORDERED.**

Dated: January 18, 2019

JOSEPH C. SPERO
Chief Magistrate Judge